Jeffrey M. Jones, jjones@djplaw.com (State Bar No. 1741)
Jeffrey A. Stephens, jstephens@djplaw.com (State Bar No. 14339)
**DURHAM JONES & PINEGAR, P.C.**
111 East Broadway, Suite 900
Salt Lake City, UT  84111
(801) 415-3000

*Attorneys for LifeStar Network, LLC*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LIFESTAR NETWORK, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>JODI HILDEBRANDT AND SUNRISE COUNSELING CENTER INC,<br><br>      Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Civil No. 2:13-cv-01072-BCW<br><br>Judge Brooke C. Wells |

Plaintiff complains of the above-named defendants and alleges as follows:

### Parties

1.      Plaintiff LifeStar Network, LLC ("LifeStar") is a Utah limited liability company with its principal place of business at 5500 W. Bagley Park Road, West Jordan, UT 84081.

2.      Defendant Jodi Hildebrandt is, on information and belief, an individual residing in Utah County, Utah, and the owner and operator of Defendant Sunrise Counseling Center Inc ("Sunrise").

3. Defendant Sunrise is, on information and belief, a Utah corporation with its principal place of business at 233 S Pleasant Grove Blvd, Suite 101, Pleasant Grove, UT 84062.

## Jurisdiction and Venue

4. This is an action for trademark infringement, false designation of origin, and unfair competition arising under the Trademark Act of 1946, 15 U.S.C. §§ 1501 *et seq.* ("Lanham Act"), unfair competition under Utah common law and statute, and breach of contract.

5. This Court has jurisdiction of the subject matter of this action under 28 U.S.C. §§ 1331, 1338, and 1367 because this case arises under federal statutes, including the Lanham Act, and because Plaintiff's state law claims are substantially related thereto.

6. This Court has general and specific personal jurisdiction over Defendants, and venue is proper pursuant to 28 U.S.C. § 1391, because the defendants reside within this district, the acts complained of occurred in this district, and because the contract between Plaintiff and Defendant Hildebrandt provides for exclusive jurisdiction and venue in the state and federal courts of Utah.

## General Allegations

7. For over 20 years, LifeStar has been helping individuals, spouses, and families heal from the devastating effects of pornography addiction and other sexually compulsive behaviors. Through an innovative and proven three phase treatment program, this intensive outpatient group therapy approach gives participants the resources, support, and structure needed to experience a successful recovery from the damaging effects of pornography and sexual addiction.

8. LifeStar is an internationally recognized treatment program in nearly 40 cities across the U.S. and Canada. Developed by Dan Gray and Todd Olson, LifeStar is run by highly trained and licensed therapists who specialize in sexual addiction recovery. Each phase of recovery is specifically designed to gently uncover, yet aggressively heal, the destructive patterns that create and maintain addictive behaviors. Workbooks, along with other materials, help provide education and structure throughout the different phases of treatment.

9. LifeStar owns U.S. Trademark Registration No. 3,398,018 for the word mark "LifeStar Network" applicable to counseling in the field of sexual addictions.

10. LifeStar has developed publications and materials for providing its program, and has common law rights in the mark LIFESTAR as applied to its goods and services.

11. LifeStar licenses its brand, materials, and other resources to therapists in different geographic areas to administer the LifeStar program in their local area.

12. Defendant Hildebrandt was at one time licensed in parts of Utah County, Utah to use LifeStar's marks and other materials pursuant to a license agreement ("License") between LifeStar and Ms. Hildebrandt.

13. Under the License, Ms. Hildebrandt was appointed as a "provider of the Program within the Territory," and was granted "a non-transferable license, under Licensor'[s] applicable trademarks, copyrights, trade secrets and other intellectual property rights, within the Territory, to market and provide the Program and distribute Participant Materials to Clients."

14. Due to a series of events, LifeStar eventually attempted to resolve differences with Ms. Hildebrandt and continue the License, but Ms. Hildebrandt was uncooperative in this

effort. In December 2012, LifeStar sent a letter to Ms. Hildebrandt providing notice of termination of the License under Section 12.1. Section 12.1 provides:

> <u>Term</u>. The initial term of this Agreement (the "Initial Term") begins upon the Effective Date and shall terminate three (3) years from such date, subject to prior termination as provided below. However, approximately sixty (60) days before the end of the Initial Term and any renewal term, authorized representatives of Licensee and Licensor shall meet to discuss and Minimum Purchase Requirements for next term, if both parties are agreeable to renewing this Agreement. Upon agreeing in writing to such Minimum Purchase Requirements, this Agreement shall be deemed renewed for an additional one (1) year term. If either party does not wish to renew this Agreement, it shall notify the other party in writing at least six (6) months prior to the end of the then-current term. The parties agree to negotiate reasonably and in good faith when setting or revising Minimum Purchase Requirements and shall do so with consideration of the then current market situation in the Territory. If the parties are unable to agree upon appropriate Minimum Purchase Requirements, either party may elect to terminate this Agreement upon thirty (30) days prior written notice.

15. The notice provided to Ms. Hildebrandt in December 2012 indicated that the License termination would be effective July 31, 2013, and reminded Ms. Hildebrandt of her obligations under the License and upon termination. Under § 12.4 of the License, termination of the contract required, among other things, that:

> (a) Licensee shall immediately discontinue its use and distribution of the Program and Licensed Materials and cease all use of the Licensed Marks. Licensee may not use or distribute the contents or concepts contained in the Program, Training Materials or Licensed Materials after termination of this Agreement for any purpose. Licensee shall ensure that each therapist and staff person understands and agrees to abide by these restrictions.
>
> (b) Licensee must immediately return all undistributed Licensed Materials to Licensor.
>
> . . .
>
> (d) Each party shall return to the other party or destroy all copies of the other party's Confidential Information, except as otherwise specified above.

1684619_1                                           4

> (e) In addition to where it is so stated, it is agreed that Sections 2.3, 2.5, 5, 8.5, 10.3, 11, 12.4, 13 and 14 shall survive termination of this Agreement.

License, § 12.4.

16. Section 5 of the agreement also provides that Defendant will not "provide group therapy or group psychoeducational work" to compete with LifeStar or solicit clients or potential clients away from LifeStar in the circumstances detailed in Section 5. Under Section 5.3, Defendant specifically agrees to injunctive relief for breach of these covenants:

> In light of the foregoing and the consideration provided by Licensor under this Agreement, Licensee specifically agrees that in the event it violates any of the provisions of this Section 5, irreparable harm will occur and thus shall be presumed and Licensor shall be entitled to an immediate injunction from any court of competent jurisdiction, in addition to any monetary damages or other relief that may be available at law or in equity. Licensee specifically releases Licensor from the requirement of posting any bond in connection with temporary or interlocutory injunctive relief, to the extent permitted by law. Licensee covenants and agrees not to argue in any claim or proceeding that Licensor has an adequate remedy at law with respect to any breach of this covenant.

17. After termination of the license on July 31, 2013, Defendant continued to maintain a website at www.lifestarutahcounty.com using LifeStar's trademarks and materials. On information and belief, Ms. Hildebrant has not discontinued use and distribution of LifeStar's program and materials or otherwise complied with the License provisions that survive termination.

18. On August 30, 2013, counsel for LifeStar sent a letter to Ms. Hildebrandt reminding her of the termination of the license and requesting that she cease use of the www.lifestarutahcounty.com website or any other infringing use of LifeStar's trademarks and materials, and that she otherwise comply with her obligations under the License.

19. Ms. Hildebrandt has not ceased use of the www.lifestarutahcounty.com website, and, on information and belief, has not ceased other uses of LifeStar's marks and materials previously licensed under the License.

20. Ms. Hildebrandt is, on information and belief, the owner and operator of Defendant Sunrise. Defendant Sunrise is, on information and belief, also using Plaintiff's trademarks, at least via the www.lifestarutahcounty.com domain.

21. LifeStar has expended substantial time, money, and resources in advertising its products and developing a distinctive brand in the minds of providers, clients, and their families.

22. Defendants' use of LifeStar's registered and common law marks, or confusingly similar imitations thereof, is likely to deceive, confuse, and mislead prospective providers and clients into believing that the goods and services provided by Defendants are manufactured by, authorized by, or in some manner associated with Plaintiff, which they are not. The likelihood of confusion, mistake, and deception engendered by Defendants' misappropriation of Plaintiff's trademarks is causing irreparable harm to the goodwill symbolized by LifeStar's marks and the reputation for quality that they embody.

23. The confusion caused by Defendants' activities is particularly damaging with respect to those persons who perceive a defect or lack of quality in any publications, materials, or programs that Defendants have not directly copied from LifeStar. This is also particularly damaging to the uniqueness of the LIFESTAR NETWORK® brand and LifeStar's ability to control the public perception of its brand. By causing such a likelihood of confusion, mistake, and deception, Defendants are inflicting irreparable harm to the goodwill symbolized by LifeStar's marks and the reputation for quality that they embody.

24. On information and belief, Defendants knowingly, willfully, intentionally, and maliciously have continued to use LifeStar's trademarks following termination of the License.

25. The License provides in Section 14.2 that it

> shall be governed by and construed in accordance with the laws of the State of Utah (without regard to conflicts of laws provisions). The parties hereby submit to the exclusive jurisdiction and venue of Utah state and federal courts with respect to any action between the parties relating to this Agreement. In any legal action related to this Agreement, the prevailing party shall be entitled to an award of its reasonable costs and attorneys' fees from the other party.

## FIRST CLAIM FOR RELIEF

**(Breach of Contract – Against Jodi Hildebrandt)**

26. Plaintiff incorporates into this Claim for Relief all of the allegations of the prior paragraphs of this Complaint.

27. Plaintiff and Defendant Hildebrandt entered into a License Agreement that, among other things, allowed Defendant Hildebrandt use of materials and intellectual property rights of Plaintiff during the term of the agreement.

28. The License terminated on July 31, 2013.

29. Plaintiff has breached at least Section 12.4 of the License, which specifies Defendant Hildebrandt's obligations upon termination of the License.

30. Defendant Hildebrandt continues to use LifeStar's trademarks and, on information and belief, other materials previously licensed under the License.

31. Defendant Hildebrandt is, on information and belief, violating the non-competition and non-solicitation covenants of the License.

32. Defendant Hildebrandt's actions have caused and are likely to continue causing substantial injury to Plaintiff, and Plaintiff is entitled to preliminary and/or permanent injunctive relief, as well as damages, costs, and attorneys' fees pursuant to the License.

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement, 15 U.S.C. § 1114 – Against All Defendants)

33. Plaintiff incorporates into this Claim for Relief all of the allegations of the prior paragraphs of this Complaint.

34. Defendants' use of confusingly similar imitations of Plaintiff's LIFESTAR NETWORK® mark past termination of the License to Defendant Hildebrandt is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' goods or services are provided by Plaintiff, or are associated or connected with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff.

35. Defendants have used marks confusingly similar to Plaintiff's federally registered mark in violation of 15 U.S.C. § 1114, and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by the federally registered LIFESTAR NETWORK® mark, for which Plaintiff has no adequate remedy at law.

36. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's federally registered mark to Plaintiff's great and irreparable injury.

37. Defendants have caused and are likely to continue causing substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

### THIRD CLAIM FOR RELIEF

**(Trademark Infringement, False Designation of Origin, and Unfair Competition, 15 U.S.C. § 1125(a) – Against All Defendants)**

38. Plaintiff incorporates into this Claim for Relief all of the allegations of the prior paragraphs of this Complaint.

39. Without the authority so to do, Defendants have continued to use LifeStar's common law marks past termination of the License to these rights, as well as marks confusingly similar to Plaintiff's registered mark.

40. Defendants' copying and use of Plaintiff's trademarks constitutes trademark infringement, false designation of origin, and unfair competition under 15 U.S.C. § 1125(a). Defendants' infringement is likely to cause confusion or mistake, or to deceive consumers or prospective consumers into believing that Defendants' services or products are the same as or are affiliated with, authorized by, approved by, or sponsored by LifeStar, which they are not.

41. Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by its trademarks, for which Plaintiff has no adequate remedy at law.

42. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's trademarks to the irreparable injury of Plaintiff.

43. Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff. Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117.

## FOURTH CLAIM FOR RELIEF

**(Unfair Competition – Utah Code Ann. § 13-5a-101 et seq. – Against All Defendants)**

44. Plaintiff incorporates into this Claim for Relief all of the allegations of the prior paragraphs of this Complaint.

45. Defendants' actions constitute an intentional business act or practice that is unlawful, unfair, or fraudulent and leads to a material diminution in value of Plaintiff's intellectual property.

46. Defendants' actions constitute an infringement of Plaintiff's trademarks.

47. Pursuant to Utah Code Ann. § 13-5a-103, Plaintiff is entitled to actual damages, costs and attorney fees, and punitive damages.

## FIFTH CLAIM FOR RELIEF

**(Common Law Unfair Competition – Against All Defendants)**

48. Plaintiff incorporates into this Claim for Relief all of the allegations of the prior paragraphs of this Complaint.

49. Defendants' actions constitute unfair competition under Utah common law.

50.     Defendants' tortious actions have caused, and continue to cause, Plaintiff to sustain monetary losses, and other damages and injury, in an amount to be determined at trial.

51.     On information and belief, Defendants' actions were done knowingly, willfully, with actual malice, and in bad faith so as to justify the assessment of increased, exemplary, and punitive damages against Defendants, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.     Defendants be enjoined permanently from further breach of the License;

2.     Defendants and all of her agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined permanently, from using Plaintiff's trademarks or any other copy, reproduction, or colorable imitation or simulation of Plaintiff's trademarks, including on any website and social media, and from using the names of individuals associated with LifeStar;

3.     Defendants be ordered to remove all material from the website www.lifestarutahcounty.com or any other similar website using Plaintiff's trademarks and transfer all "LifeStar" domains to LifeStar;

4.     Defendants be ordered to deliver up all publications, products, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional material, stationery or other materials in the possession, custody, or under the control of Defendants that are from Plaintiff, incorporate substantial portions of Plaintiff's materials, or are found to adopt or to

infringe any of Plaintiff's trademarks or that otherwise unfairly compete with Plaintiff and its products and services;

5. Defendants be compelled to account to Plaintiff for any and all profits derived by Defendants from the sale or distribution of infringing goods or provision of services as described in this Complaint, including prejudgment interest thereon;

6. Plaintiff be awarded all damages caused by the acts forming the basis of this Complaint, together with prejudgment interest thereon;

6. Based on Defendants' knowing and intentional use of confusingly similar imitations of Plaintiff's trademarks, the damages award be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

7. Defendants be required to pay to Plaintiff the costs of this action and Plaintiff's reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint;

8. Based on Defendants' willful and deliberate infringement of Plaintiff's trademarks, and to deter such conduct in the future, Plaintiff be awarded punitive damages; and

9. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, LifeStar hereby demands a trial by jury on all issues and claims so triable.

DATED:  December 3, 2013  **DURHAM JONES & PINEGAR, P.C.**


 */s/ Jeffrey A. Stephens*
Jeffrey A. Stephens

*Attorney for LifeStar Network, LLC*